TAKAMINE LABORATORY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3199.    Promulgated August 1, 1927.

*Louis H. Hall, Esq.*, for the petitioner.
*Charles H. Curl, Esq.*, for the respondent.

Deficiency of $112,768.92, income tax for 1918. The respondent added to petitioner's gross income an amount alleged to represent profit on an exchange of property for stock.

### FINDINGS OF FACT.

Petitioner, a corporation, was organized under the laws of New York on December 21, 1914, with its principal office at 120 Broadway, New York City. Dr. Jokichi Takamine, now deceased, was president of the petitioner, his son, Jokichi Takamine, Jr., its secretary, and another son, Eben T. Takamine, treasurer. Petitioner was capitalized at $10,000; 100 shares at a par value of $100 a share were issued, 97 shares to the father, Jokichi Takamine, and two shares and one share to the sons, Eben and Jokichi, Jr., respectively. They were the sole stockholders and directors of petitioner. Petitioner was engaged in the manufacture, importation, exportation, and sale of chemicals and pharmaceutical supplies in bulk, its principal trade being with Japan.

Some time prior to August, 1918, Dr. Takamine and his son, Eben, were in Japan and discussed the formation of a separate company under the laws of Japan, which would carry on for petitioner its business in Japan. Previously the Sankyo Company had acted as petitioner's agent in Japan. The assets of the petitioner's business department, that is to say, that branch of the concern which carried on the importation and exportation of chemicals, were to be transferred to the new Japanese company, and a certain number of shares of stock of the new company were to be issued to the Takamines. At this time the war with Germany was 'in progress and apparently substantial profits were to be made from this trade in "heavy chemicals."

Accordingly, on August 19, 1918, the contemplated new company was incorporated in Japan under the name of the Takamine Industrial Co., Ltd., hereinafter called the "Japan Company." It had its principal office at 444 Tokyo Marine Building, Tokyo, and a branch office at 120 Broadway, New York City. Dr. Takamine was president of the company and director authorized to represent it. Its capitalization was 3,000,000 yen, which at the 1918 exchange value of the yen (49.8 cents) amounted to approximately $1,500,000. The par value of a share was 50 yen ($25), and 60,000 shares were issued. Dr. Takamine subscribed for 14,000 shares, and each of his two sons to 10,000 shares, making 34,000 shares, or an interest of 56.66 per cent of the stock in the Takamines. The par value of the stock was not, however, paid in full to the Japan Company. Twelve and one-half yen per share, or one-quarter of the par value was paid in by other stockholders than the Takamines, twenty-seven in all, who

held 26,000 shares, the remaining three-fourths being left subject to call by the corporation's directors. Of the 34,000 shares held by the Takamines, one-half of the par value, or $425,000 was paid in. But this sum was not paid to the new company in cash.

On October 29, 1918, an agreement was signed by Dr. Takamine as president of the Japan Company and by Dr. Takamine again as president of the petitioner, by which an assignment was made of all the assets and liabilities, with a single exception, of petitioner's "business department," as of August 31, 1918, to the Japan Company. This property of petitioner was worth $250,000 and consisted of merchandise and property on contract, in transit and in Japan, and was received by the Japan Company as one-half payment on the stock subscribed by the Takamines. The names of the Takamines, and not that of petitioner, were entered on the Japan Company's stock subscription list. The petitioner accepted the stock of the Japan Company and an entry was made on petitioner's books, setting up an investment of $425,000 in the Japan Company. The Takamines originally intended to receive this stock as individuals but later, on the advice of counsel, decided that petitioner should receive it. No certificates of stock were ever issued to or received by the petitioner, or its nominees, nor by any other shareholders of the Japan Company. No sales of stock by stockholders were made after original subscription.

After the Armistice, November 11, 1918, there was an immediate decline in the market value of drugs and chemicals. Contracts were repudiated all over Japan. The value of the commodities transferred to the Japan Company dropped. At this time the Japan Company was under contracts involving large sums of money for the purchase of chemicals. Some of these the Japan Company sought to cancel, and in doing so became in one instance involved in a lawsuit which resulted in a loss to it of $30,000. The company ceased doing business on February 10, 1919, but goods under order continued to arrive in Japan after this date. It was the practice of the Japan Company's New York office to draw drafts covering shipments, without letters of credit, on Tokyo banks, including the Yokohama Specie, the Sumitomo, and the Taiwan Banks, for the amount of the expected sale price, and to cash these drafts in New York. The shortest time of shipment between New York and Tokyo was 60 days, and often as long as 4 or 5 months elapsed while goods were in transit.

In November, 1918, the New York office of the Japan Company had instructed the main office at Tokyo to procure no further orders and in February, 1919, the Tokyo office instructed the New York branch office to ship no more goods. Under the conditions indicated

above, however, goods arrived, consigned to the Japan Company, as late as March, 1919.

By February, 1919, Dr. Takamine had returned to Japan. On March 18 or 19, 1919, all the assets and liabilities of the Japan Company were assigned to Dr. Takamine. At this time the liabilities of the company exceeded its assets by about 1,100,000 yen. Dr. Takamine then in turn assigned part, or all, of the Japan Company's assets to Sankyo on consignment, the proceeds to be applied against indebtedness of the Japan Company on account of drafts honored by it. He also sold in March, 1919, certain personal property in order to procure a loan of 468,433.88 yen for the Japan Company, which that company never repaid him. Dr. Takamine bought, after February, 1919, a majority of outstanding shares of the Japan Company. No call was made by the Japan Company on unpaid stock subscribed, and it was Dr. Takamine's object in buying outstanding shares of the company to prevent further losses to his friends who had subscribed this stock. He assumed and paid all liabilities and the creditors of the company were paid in full.

Formal dissolution proceedings were instituted on August 21, 1919, in accordance with resolutions of a general shareholders' meeting. A report of liquidation of the company was made in November, 1919, with a statement of assets and liabilities as of September 30, 1919, as follows:

ASSETS

| | |
|---|---|
| Capital unpaid | $1, 825, 000. 00 |
| Good will | 350, 000. 00 |
| Furniture | 6, 161. 85 |
| Due from customers | 4, 377. 73 |
| Bills receivable | 17, 114. 59 |
| Advanced payments | 13, 472. 49 |
| Deposit in bank and cash on hand | 53. 42 |
| Due from New York Branch Office | 130, 689. 48 |
| Unsettled accounts with New York Branch Office | 218. 52 |
| Loss by Tokyo Head Office | 1, 042, 458. 73 |
| Loss by New York Branch Office | 82, 825. 52 |
| Total | 3, 472, 372. 33 |

LIABILITIES

| | |
|---|---|
| Capital stock | 3, 000, 000. 00 |
| Legal reserve fund | 2, 600. 00 |
| Suspense account | 1, 338. 45 |
| Loan from Dr. Takamine | 468, 433. 88 |
| Total | 3, 472, 372. 33 |

The entire loss on ultimate liquidation, which was completed on March 10, 1924, was 1,272,776.13 yen.

No dividends on the stock were ever declared and the stockholders never received any dividends on the company's dissolution. The stock of the Japan Company became worthless in 1919.

The books and records of the Japan Company were destroyed in the earthquake and fire of September 1, 1923.

The deficiency notice to petitioner, in addition to stating the deficiency for 1918, states there is no deficiency or overassessment for 1919, and shows a net loss of $27,162.76 sustained in 1919. In computing the deficiency for 1918, the respondent has allowed this net loss for 1919 as a deduction.

### OPINION.

STERNHAGEN: From a record far from certain as to the facts, some of which appear in testimony and documentary evidence given in Japan on written interrogatories, the foregoing findings have been made. They are not satisfactory because the absence of clear detail requires inferences of fact to serve as premises for conclusions of law. Perhaps it was necessary, or at least justifiable, that a closely held business should be reorganized with as little regard for detail or legal formality as is shown by this record; but if so, when the matter becomes of legal significance in litigation such as this, the tribunal can only take the evidence as it finds it, make such inferences as are necessary, as reasonably as possible, and from this reach its decision. In such a decision there can be little value by way of precept. Numerous issues are raised in the pleadings but in view of our decision it is unnecessary to consider them all.

Considering all the evidence, we find no foundation upon which to rest a conclusion other than that the stock of the Japan Company here in question was worth $425,000 as found by the Commissioner and was taken by the petitioner for assets which had cost $250,000, thus establishing a gain of $175,000 as part of petitioner's 1918 income. This stock was not entirely worthless in 1918, although probably of doubtful value. In 1919 it became totally worthless and in that year petitioner sustained a loss of $425,000 by reason thereof. This loss should be included in the computation of petitioner's admitted net loss of 1919 and applied against its 1918 income to redetermine the 1918 deficiency in question.

*Judgment will be entered on 15 days' notice,*
*under Rule 50.*

Considered by GREEN and ARUNDELL.